All right, our final case for the day. On behalf of the petitioner, John Pugin. In this categorical approach case, the state offense, Virginia accessory after the fact, sleeps more broadly than the federal offense, which is offense relating to obstruction of justice under 8 U.S.C. 1101-A-42. It is not an aggravated felony under the INA. The BIA erred in concluding otherwise and its conclusion should be reversed for several reasons. I'd like to turn first to two of the reasons that relate to the BIA's analysis of the federal. Can you turn this up a little bit? I can't hear her. Excuse me. Your honor, I'm sorry. Was that request to me? Would you where we're adjusting the volume so I can hear you better? Okay, I'll continue. So first, there's a baseline problem, and that's with the board's interpretation of 43 S as encompassing offenses where an offender intends to interfere with proceedings that do not actually exist, but are merely reasonably foreseeable. The Ninth Circuit held that unambiguously foreclosed by the statute in its 2020 Valenzuela-Gallardo decision. The Third Circuit reached a similar conclusion in its 2017 Flores case, and no court has upheld this more expansive interpretation of 43 S this advanced year. But I also want to point out another problem with the BIA's analysis of the federal offense, which is that not only is this interpretation. So if I could ask a threshold question, your view is that offense relating to the obstruction of justice is an unambiguous term? Yes, your honor. And that's consistent with both the Ninth and the Third Circuit's analyses. Just so that I'm sure I'll follow, to follow up on that question, what does it, can you just describe for me what you believe it unambiguously means? It unambiguously requires a specific intent to interfere with a judicial proceeding or another discreet and discernible point in the process of justice, which is what the BIA said for years in the Espinoza-Gonzalez decision. But it's not limited unambiguously to the U.S. Code-type offenses, the chapter that refers to obstruction. Your honor, I think it would be unambiguously limited to those types of offenses. It's obstruction offenses like the ones in the U.S. Code, and I don't, I think there's some tension between like- You just didn't mention that. When you describe what it, I was just trying to understand what your argument is. Just give me again, one more time, just so I can be clear. What is it that it unambiguously means? Is it just, it unambiguously requires specific intent, or it unambiguously is of the type that's included in that chapter, which therefore requires specific intent? You understand what I'm saying? I want to understand what the words, what you say the words mean, and there seems to be some ambiguity between those two positions. Um, yes, your honor. I'll try to respond to that, which is the first step of what is ambiguous. The offense relating to obstruction of justice is the words that Congress chose, and it's the title of a chapter in chapter 73 in the criminal code. So we think that reference is there on a specific issue here. So if there is a Chevron question here- But that's, can I, sorry, can I stop there? But that's what you think is unambiguously clear, is that it incorporates, by reference, the U.S. Code provision, or chapter, or sub-chapter. Yes. And from that, you then get your rule. Yes. But there's no cross-reference to chapter 73 in the criminal code, is there? No, your honor, there's not. But- And there's no, there's no, there's no definition in the INA of the term either. Is that correct? No, your honor. The term itself is in the definition section of the INA, in the aggravated felony section. And so, I think there's a clear, especially- So it defines, it defines obstruction of justice in the INA? It, it appears in the definition section as one of the defined terms that is an aggravated felony under the INA. And so, obstruction of justice there is a term of art, as multiple courts have, have recognized. It sits alongside perjury and bribery, which also refer to criminal code sections. And so, it's fairly straightforward, really. And I, I do want to turn a little bit to a next issue that arises. Before you turn to that, why, why do we, if it, if it incorporates this chapter, why, why is it, you know, you say it incorporates the chapter, the term of art. Why then does it include any state law offenses, right? If it really incorporates the federal chapter as a term of art, why does it include any state law offenses? Your honor, I, I think our position is that it refers to those offenses and their state analogs that a, an overall structural purpose of the aggravated felony of the INA is to sweep in the state offenses that are the same as the federal offenses, but in a different forum. And so, you see- So what about, what about the phrase gets me there unambiguously, right? So your, your point is that this phrase is unambiguously clear that it incorporates the federal provision, but it's also unambiguously clear that it's not just the federal provisions. It's also some subset of the state provisions. I mean, I'm just having trouble understanding the sort of, the, the, the steps that you're taking to, to show the unambiguous clarity that, that your argument, I think depends on. Your honor, I, I think that, that going directly to chapter 73 and the crimes listed there is, is not all that complicated. They're all acts about interfering with official proceedings and the processes of justice. And so, capturing those offenses and the analogous state offenses, for example, Virginia has an obstruction of justice chapter that has perjury and bribery in it, you know, same as the, the two offenses listed next to obstruction of justice. And so, I think it's a knowable universe. It's a term of art and does, does refer there. But even if the BIA was, was allowed to do what it did here and extend to reasonably foreseeable proceedings, which it does hinging to section 1512 of chapter 73, it, I want to point out a big problem in that analysis that is also determinative of this case in Mr. Pugin's favor. And that is that the BIA's use of this standard that it adopted reasonably foreseeable is totally contrary to the law that it claims supports that standard. What I mean is this, when the BIA added interference with reasonably foreseeable proceedings to its definition of the generic crime in the 2018 BIA Valenzuela-Gallardo decision, it did so citing directly to the Supreme Court's Marinello case. And so, its use of that term should be consistent with Marinello, but it is definitely not. And I need to give a little background on Marinello here, which is a tax obstruction case from the Supreme Court. But Marinello, while being a tax case, built on prior cases about chapter 73 offenses, which include Pettibone from 1893, Arthur Anderson, United States v. Aguilar, and all of these rejected government attempts to assign obstruction liability for conduct that could interfere in a proceeding that didn't actually exist. Marinello rejected the government's argument that foreseeability means generalized showing that the defendant could be aware, and I quote, that the IRS might catch on to his unlawful sometimes. It would impose a requirement of showing a subjective intent to interfere with a particular proceeding. And this reasonable foreseeability test has been used in a variety of chapter 73 crimes, including by this court in the case called United States v. Young in 2019. So, it has meaning, and it is a standard with teeth. Young was a case where the government's position was rejected, and so we know the standard means something. And what it doesn't mean, though, is what the government advances here. In Valenzuela-Gallardo 2, here's what the BIA said the standard means. It means the government needed only to show that an individual acted with the intent to frustrate an investigation or proceeding that might be instituted. That is not the Marinello standard. The government adopts that position here in page 26 of its brief, and in the decision below in this case, the BIA just said that this definition was satisfied because the conduct could have hindered a felon's apprehension, conviction, or punishment. And I want to note on page 42 of the government's brief, what they say is Mr. Fusion fails here because he fails to establish that Virginia has successfully prosecuted a defendant for conduct broader than, quote, frustrating law enforcement. Frustrating law enforcement is a far cry from the reticularity and foreseeability requirements of the test from Marinello. What about, what do you tell me, if we're looking at this chapter, assuming the first step, that we're only looking at this federal chapter, tell me about 1510A. And under 1510A, what am I looking at there for an existing investigation? Your Honor, I apologize. I need to pull that up in front of me. I'm not, if it's not at mine, maybe you can just do it on rebuttal. I'm just, I'm not looking at a number of the offenses in the section you're looking at, assuming we get to that section. And they talk about, you know, going to law enforcement in the first instance, whether it's also, I understand your argument, at least about 1512, but 1512 doesn't stand alone. Even if we're looking at the federal chapter, I find it hard to see why each of those offenses requires the existence of an ongoing proceeding as a necessary predicate. Your Honor, 1510, 1512, and the few provisions that are different perhaps in the character of an ongoing proceeding are not the majority rule and shouldn't be the basis of the generic offense, would be one response. The second is, and I'd have to look at 1510 specifically, but for 1503, which is a provision the government relies on, and 1512, which is another provision the government relies on as supporting a divorce from the extant proceeding requirement, both of those have been construed by the Supreme Court as really requiring a pretty serious nexus, first in time and objective and particular foreseeability analysis. So, they don't get the government where it's trying to go here, which is general intent to frustrate law enforcement. And I want to point out another problem with landing there, which is where the government is going in this case, and I just want to underscore that. It's that it really, when you have a toothless standard for reasonably foreseeable, we're back where we were in 2016 when the Ninth Circuit vacated the Constitution. It was unconstitutionally vague that it was not possible to figure out where interference with the process of justice could actually begin, and it would be unadministerable and unfair. The Third Circuit has noted similar problems with too mushy of a standard in this area in the Flores decision. And so, that area, that constitutional problem exists if the BIA and the government can proceed with this sort of meaningless Maranello standard that they've the constitutional problems here, by the way, resolve this case, whether it's on de novo review or whether we're at Chevron step two. So, we think no matter which path the court takes through this problem, it arrives at the same place. Counsel, if I could ask you before your time runs out, if we were to just assuming that we agreed with the government that the term was ambiguous and that the BIA had made a reasonable interpretation, talk to us about the categorical match with the Virginia statute. Yes, Your Honor, there is no categorical match under any of the versions of the federal crime that are advanced here, because the Virginia crime just sweeps more broadly. The government's standard under their most favorable standard is intent to frustrate law enforcement, but that's not actually an element, a requirement that the prosecution must prove for a conviction. It's not an element of the Virginia Accessory Act of the fact crime. We know what the elements are, which are the key to the categorical approach from the Virginia Supreme Court's only case on this topic this century, the Dalton case. There's three elements, and they numbered one, two, three, that a felony is complete, that the accessory knows that the felon is guilty, and that the accessory renders help to the principal. And then the list stops. Well, let me ask you this, I guess I would call it a practical question. My guess is that 99 percent of all the prosecutions in Virginia for this crime, the parties in the court use the Virginia model jury instructions, and those model jury instructions specifically include as a separate element the specific intent provisions from the Wren decision. So is it your view that all of those juries are improperly instructed? Your Honor, possibly, but I think there's also some missing facts here about when those instructions went into use, how often they're used, and then whether really what are they? Well, they are the model jury instructions, and most of these categorical, modified categorical dilemmas we're called upon to resolve, we are often looking at, well, what happens in the state courts? What does the state Supreme Court say, but what do the jury instructions say? So it seems like to me if we were to adopt your position, we would be holding in effect that a large number of these state prosecutions are simply invalid. May I respond, Your Honor? I'm out of time. No, you may. Yeah, the question is, will it invalidate anything in Virginia's statutes, I guess. That was the question. Judge Agee can restate it, but you can answer it if you want to restate it. Well, obviously, we wouldn't be invalidating the state court determination, but it seems like it would be at odds with what the state courts do. Your Honor, it isn't for two reasons. One, that if they're put up next to the Supreme Court's direct statements of the elements, the jury instructions wouldn't control. But most importantly, that language from Wren and Buck is not a match to any of the proposals from the government here, that you act to elude punishment generally. The government is trying to drag the generic federal offense to that breadth with this frustrate law enforcement. That's not obstruction of justice. Elude punishment is old and indefinite language, and it describes the act. It describes the act that you have to take to be an accessory. You mow the lawn of a known felon. That's not accessorial. It's a description of the act. It's not an intent element. It's separate from what generic offense needs to match, and it's separate in substance. Your Honor, Virginia, basically, you help someone unload a truck that's stolen goods. You know they stole them. You're guilty because you want to help the person who did it. It had nothing to do with any kind of proceeding about justice, obstruction of justice. That's all Virginia requires. We look at elements, and your jury instructions are tailored based on the evidence presented in the broad range, but whatever it is, but it sweeps clearly broad. It doesn't require any specific intent to obstruct justice at all. It's just to, as you said, darling, you're right on. Exactly. Then, you know, the crime is committed. It's completed, and you know it's been done, and you're trying to help the person who did it. That's all. Either way, I agree with you. Either way you look at it, whether you say it's that approach, and what about, not to mention the rule of lenity. I mean in terms of you have to, you know, dual standards. You gotta, you default to the criminal statute, but anyway, interpretation, but you didn't get to that, but that's fine. Unless you have anything further, we can move on. I agree, your Honor. Thank you. All right. Miss, Miss, Miss Nifkin, Kiffin, Kiffin, Kiffin, I'm sorry. Oh, wait. Good morning. May it please the court, my name is Margo Niffin, for the United States Attorney General. Your Honor, the court should deny this petition for review. Not only is the board's definition of offense relating to obstruction of justice entitled Chevron deference, but the board correctly concluded that the petitioner's accessory after-the-fact offense constitutes an aggravated felony under this provision. To begin, the court should afford Chevron deference to the board's reasonable definition of offense relating to obstruction of justice. As the majority of the courts who have considered this issue have concluded, the phrase offense relating to obstruction of justice is ambiguous. Now, when considering this analysis, the court should apply the framework that the Supreme Court set out in Esquivel-Quintana. There, the Supreme Court said that unless a phrase is expressly defined by statute, the court should consider a number of different sources to determine a phrase's ambiguity, including federal and state statutes and the model penal code. Here, the phrase offense relating to obstruction of justice is not specifically defined in the INA, and critically, it is not defined by cross-reference to Chapter 73. This is important because in Esquivel-Quintana, the Supreme Court indicated that if there is not such a cross-reference, the court should not look to the federal statute to determine a phrase's ambiguity. Nor do the dictionary definitions of obstruction of justice provide a clear and unambiguous definition at the time of enactment. Specifically, the Dictionary of Modern Usage defined obstruction of justice as a broad phrase that captures every willful act of intimidation, force, or corruption that lends itself to somehow impair the machinery of justice. Now, this is anything but clear and unambiguous. Counsel, may I ask a question? Why should this court defer to Chevron deference to an administration executive branch agency in terms of interpreting what a criminal statute means? Well, as this court has even recently concluded in Del Mayo, Congress has specifically provided the Attorney General with deference in interpreting the phrases of the INA, and this deference is particularly important in the context of immigration. And this court has multiple, over multiple times, indicated that Chevron deference is the appropriate framework. Can you cite the case where we have to, defer to their Chevron deference for deciding what a criminal statute means? For instance, in Espinal Andrades, which was another aggravated felony provision, I believe it was 1101A43E. In that case, the court indicated that Chevron is the appropriate framework, and to the extent that the rule- Do you tell me what phrase in the criminal statute, criminal offense was being questioned? That was arson, I believe. And so- So we had to defer to them as to what arson means? In that case, the court indicated that Chevron was the appropriate framework, and that because the phrase in the INA was ambiguous, it did defer under Chevron's second step to the board's definition. And in addition, it considered the rule of lenity, and it indicated that the rule of lenity only plays a role if there is a grievous ambiguity when considering phrases of the INA. And here too, I think it's important that obstruction of justice in 1101A43S is, it's not obstruction of justice alone. It's a broader phrase, offense relating to obstruction of justice. And so I think that that's why- Counselor, can I also ask, I find this is an interesting point, so I want to make sure I understand. One, I take your point to being, we've just done it. But if we get to sort of why we've done it, we've done it in five or six cases doing aggravated felons. Is it because the criminal application here is only indirect? So in other words, you don't get prosecuted for having committed an aggravated felon. It only affects your sons if you've previously been deported as an aggravated felon, right? And so it's the civil action that has an indirect effect on the criminal action, not a direct effect. If it was a direct effect, then we might be in the Leocal context. But where it's indirect in the aggravated felon context, we do not ignore Chevron. We instead apply it. Is that a fair summary of what we're looking at? That is correct. And I think that that's what distinguishes this case from Leocal and Karachuri. In those cases, the Supreme Court was specifically looking at a criminal statute. Here, there is no cross-reference to a criminal statute. Instead, we're looking at a phrase in the INA. And so we're looking at it in the civil context of the immigration context. And that's why, as this court has repeatedly indicated, Chevron is the appropriate framework to consider here. So let's assume, okay, Judge Richardson, which you've adopted his argument, you take that argument. Do you still have to look in categorical match? Yes, yes. Does Virginia sweep more broadly? Do we have to look at lenity there? So when we're looking at, so the rule of lenity, as the petitioner proposes, would be relevant in considering whether to defer to the board's generic definition. So as we argue, the rule of lenity doesn't apply. And so we're looking first to see whether the phrase is ambiguous, which it is. And then because it's ambiguous, the court must defer unless the board's generic definition is arbitrary, which it clearly is not. So that's the first consideration. How broad does it sweep? Does it include someone who helps their friend who stole some property from a burglarized home unload the truck? Does it sweep that broadly? So the board in constructing, again, we're looking to see whether the board's analysis of constructing this definition is reasonable. The board reasonably considered both Chapter 73 and the offenses encompassed under Chapter 73 and 18 U.S. 3 in determining what the generic offense encompassed. I understand the argument. You've adopted that argument about why you do it. I understand it. But are you saying now you don't have to look at whether or not it's a categorical mark, follow our precedent in the Fourth Circuit and follow it? You don't have to do that either? No. So now we look, once we determine the generic offense, we do the categorical approach and we compare the Virginia statute to that. Here, in looking at Virginia's accessory after the fact, I think it's first important to emphasize that the petitioner failed to exhaust any challenge regarding the reasonable foreseeable proceeding. The only issue before the court is whether Virginia's accessory after the fact is overbroad when compared to, as to the intent requirement, is overbroad when compared to the generic. Okay. I'll follow that. Go ahead. I'm saying, go ahead now, do the categorical analysis. Okay. So under the categorical analysis, we're looking to the issue of specific intent. Virginia case law dating back to 1875 in Wren has indicated that there is a specific intent requirement. Counsel, along that line, as I understood opposing counsel's argument, which would be part, I take it, of the question you're now addressing. As I understood that argument, she indicated that the government's position takes obstruction of justice beyond the definition in the Wren case, that it's broader than that. So if you could address that argument as well. Of course. And so to the extent that she's challenging the reasonable foreseeable issue, as I indicated, that is not exhausted. So we're specifically looking at the specific intent requirement that the board has required under its generic offense. In Wren, the Virginia Supreme Court indicated that a defendant must act with the view of enabling, of assisting the principal to evade punishment. And that requirement has never been overruled by the Virginia Supreme Court. It was repeated again in Buck about 30 years later. And as discussed, it currently appears in the model jury instructions, as well as in Eastern District of Virginia, a federal case from 2017, and Virginia Court of Appeals cases. And so that specific intent requirement has always been a part of Virginia state law. Virginia cases are intent to assist with evading justice. It is that you acknowledge that the person, we have to go by elements. And what Virginia, are you saying Virginia would not, you would not be guilty if you are helping your friend who burglarized their home unload the truck to get into his home or to wherever? You're saying that under Virginia, that would not be prosecuted under that statute? That you represent to the court? That, so if we look at the facts of Wren, I think that that's- Did you hear my question? Under Virginia law, if you provided that assistance with the intent of helping the principal evade justice, evade punishment- That's the point. It does not require any specific intent to evade justice. It only requires you to aid the person who committed the crime. In the- He couldn't lift everything himself, so you helped him lift it. And you knew he stole it. That's all that's required. Under the jury instructions, there is a specific intent requirement. Your instructions aren't elements. They are a requirement of the offense. And I think that, again, looking at Wren- No, no, no. Every jury instruction doesn't go to an element necessarily. The jury instructions talk about what does reasonable doubt mean, what is approximate cause. There's all kinds of jury instructions. I'm sure you know. You've tried a case before. And so, we're talking about elements here when we do that. You have to follow full circuit precedent. I mean, we talk, we've got a lot of case law that talks about these matches. And we look for whether or not it's a match. And certainly, Virginia, and we look at what they actually, what they convict people of. And they certainly convict people of accessory after the fact. You know, I'm a legitimate lawyer, and Judge Agee is even more so, not only a lawyer, but a former justice. I know, well, you know, I'd say, oh, wait a minute, you moved that truck. But my affirmative defense is, I didn't try to obstruct justice. I don't care. Didn't you steal it? Yes. Did you help him? Yes. And was it a finished crime? Yes. You're guilty. Well, I think under the, the petitioner has pointed to no cases that show that someone was convicted for this offense, for accessory after the fact, with any broader intent than, and I think that that's, again, under Wren, the Supreme Court said that the defendant was not to the principal in that case. He did not arrest the principal right away, and then he helped with bail. And the Virginia Supreme Court said that this wasn't enough, because although he provided that assistance, his intent was not to do that in order to help the principal evade punishment. His intent was to get the money back, or the victim in that case. And the Virginia Supreme Court said that that wasn't, he was not guilty of accessory after the fact. And that case, Wren, has consistently been cited since, since that time as the seminal accessory after the fact case. Counsel, I don't, I just don't have it in front of me. But back to the, to the chief's question on the model instructions. Do the model instructions describe specific intent as an element of the offense, or not? I just don't have them here. They, I can read it specifically, so it's not, so under the instructions, under the fourth element, the fourth requirement, it says that the defendant comforted, relieved, hindered, or in any other way assisted the person who committed the crime with the intent of helping that person escape or delay capture prosecution. Or punishment. So it is a part of the fourth instruction that they provide assistance with the intent of helping the principal escape or delay or capture prosecution. But the, the, the beginning paragraph to that, I think, is the answer to Judge Regerson's question. The Commonwealth must prove beyond a crime in the jury instruction. Is that correct? That is correct. Thank you. Yeah. And I, and this, this is also we see as instructive. Again, in, in Schmidt, a recent district court, federal district court decision, the, the federal district court did read it an intent requirement. In that case, the district court indicated that because the person, when they provided assistance, thought that it was a different, they didn't believe it was the principal in that case. They thought it was someone else. There wasn't the intent that was necessary to have been guilty for accessory, as a fact. So in addition to the jury instructions, we see, and the court of, the Virginia Court of Appeals as well, we see these other sources also referencing this specific intent requirement. And those things that were, that Judge KG read, do you need them to be in the conjunctive or in the disjunctive? You have to do all of those things, or one of them could satisfy a specific intent? Each of the following elements of that crime. So each of the following must be proved. Oh, I mean, so everything in the list is in the conjunctive, right? So in Virginia, you would have to prove specifically that beyond knowing that it was stolen, you wanted to make sure the person wasn't captured. How do you prove that? Yes. How would you prove that? I mean, I think that there could be a number of different, if it can be proven that someone acted with an intent other than to help the principal evade punishment. For instance, in Brent, there was evidence that the principal, or excuse me, the defendant was just trying to do his job as a detective, that the victim in that case actually didn't want the principal to be put in jail at that time. He just wanted his money back. And the Virginia Supreme Court indicated that because there was this evidence of another intent, that the defendant wasn't guilty of accessory evidence of fact. So I think that that's a good example. Or in Schmidt, there was not evidence of a specific intent because the defendant thought that he was helping someone else. And so again, if there's evidence that someone acted for an intent other than to help the principal evade justice, they wouldn't be guilty under Virginia state law. And you read this in light of Fourth Circuit precedent, how this analysis is done. Yes. Under Fourth Circuit precedent, in looking at how we apply in Chevron, the phrase offensive written to obstruction of justice is ambiguous. The board's definition is not arbitrary or capricious. And then looking to the categorical approach, the only issue before is that of specific intent. And based on Virginia Supreme Court law, there is a categorical match. The petitioner has not established that it is overboard as to the specific issue. And so if there are no further questions, in conclusion, the court should afford the board's reasonable definition of offense relating to obstruction of justice is entitled to Chevron deference. And in that the board correctly concluded that the petitioner's offense is a categorical match to that definition, the court should deny this petition for review. Thank you. Thank you. Nifton? Nifton? Ms. Hutton, you have some time left. Thank you, your honor. I want to try to reach a point about the state offense and a point about the federal offense. So on the state offense, I think I have to comment briefly that the government's analysis here is completely wrong, that somehow if retrospectively, I could prove that a different intent had been required by a court, it's some sort of, strange analysis for criminal liability that it has to prove a different intent somehow. But if we're going to take that retrospective guessing exercise, certainly cases like I believe the Johnson case that your honor has been referencing about loading goods, the Dunn case where the accessory used cocaine that was bought with the proceeds of a crime, the Goodson case where the accessory was an accessory to a first robbery and then went along and participated as a principal in the second, all of those easily give rise, if we're going to guess in retrospect, about what an accessory might have been intending there. It was not an intent towards an existing investigation or proceeding. But the most important thing about... Is your position on that, counsel, that those cases overruled Ren and Buck? No, your honor. Ren and Buck serve to describe the act and are harmonized by the Supreme Court in Dalton. And what those cases show is that there's no limitation being placed on present-day prosecutions or reasonably contemporary prosecutions based on the intent. These are sufficiency of the evidence challenges where there's no reference to the intent whatsoever. And so it's assumed that without intent... Do you know in the Johnson case, for example, do you know what the instructions were in Johnson? I do not, your honor. And in any of those other cases? No, your honor. They span a decent span of time and complex prosecution, often multi-defendant cases. It's a little harder to figure out. So what we know is that the appellate court decisions don't discuss specific intent. We don't know what the jury in those cases was required to prove, whether they complied with the court's admonishment in Ren and Buck, or whether they followed the model during instructions. One way or the other, based on those decisions. We don't know. And so it's determinative that the courts are not applying any specific intent limitation or filter, which is very germane here because we're looking to see, does the intent go more broadly than the federal offense? So I wanted to respond to a question, Judge Richardson, that you raised in my opening argument about section 1510, which I did get to glance at and it refreshed me that it's an investigations proceeding. And so I think it's got to be important that even under Espinosa-Gonzalez and under the position that we're advancing here, that existing investigations certainly are included in that generic definition of the federal offense relating to obstruction of justice. 1510 is not about an investigation, right? It's to prevent communication of information relating to the violation of a criminal statute, right? So that exists before there is an investigation. That's the point. This is an initial one. If there's a different statute for health care, there's a different statute for bankruptcy, right? The point of that is that there's no suggestion that requires an investigation to pre-exist the crime. Your Honor, I apologize then. I must have been reading very quickly. But the point of those is that they don't satisfy a really meaty test for foreseeability where you'd be proving an intent for the specific proceeding. It's preventing reporting for a specific proceeding that's going to have that nexus that's been upheld since 1893, and it's going to have a subjective intent and a particular element. And really the common problem with the government's arguments on both the state offense and the generic offense is that they want to write the object out of the answer. There does need to be particularity. You have to interfere with something. In 1893, the Supreme Court said obstruction of justice requires something to obstruct. In 2018, in Marinello, it says obstruct suggests an object. And so what all of these chapter 73 offenses have in common, what does that mean? Why couldn't an object be a future investigation? You have to have an object, but the object need not be in existence at the time. It needs to be a future investigation. If I obstruct a future investigation, future investigation would be the object in that sentence. Your Honor, if the future investigation is reasonably foreseeable to the defendant, is particular, and has a nexus with their activities for the few provisions of chapter 73 that that would apply to, then yes, that's what the Supreme Court has said. But it would not be just an intent to frustrate law enforcement. That would be unconstitutionally vague. It would violate due process. It would not be administrable. And there would be a massive corporation of powers issue. What is before or after investigation has to be the object is to frustrate the investigation. That's the point. Right. That's the tethering point to it. And mere fact that just because it could be before doesn't untether it from that. This is, it's beyond, you know, it's amazing that the rule of limited doesn't exist anymore, it doesn't seem like. And on one hand, we say the Supreme Court's case doesn't, but in the Virginia Supreme Court, which obviously Virginia is not following because it's certainly convicting people without any specific proof of anything about an investigation at all. I mean, that's just a fact. But anyway, do you have anything else, counsel? Your Honor, can I just run to that last point very briefly, which is just that if there is a question of what Virginia is actually doing, what Mr. Fusion needs to show, and we think we've really surpassed the standard, but it's just a reasonable probability that it would have, prosecution could have be sustained in that overbroad form. So these past cases are relevant and these, whatever the jury instruction is today or whether you think that Virginia, there is no need to cast judgment on what the actual law necessarily is today to meet that reasonable probability standard. And we think we've done that. So for all of those reasons, we ask that the court grant Mr. Fusion's petition and vacate his order of renewal. Thank you so much. Ms. Hutton, we note that you are caught upon it and take this assignment. Thank you so much, Chair, on behalf of the Fourth Circuit. We also, Ms. Niffen, we thank you for ably representing the attorney general in this matter. Counsel, we can't come down and shake your hand, but know that we appreciate your arguments. Thank you for being here. We hope that you and pray we will continue to be safe and well. Thank you. And with that, I'll ask the clerk to adjourn the court, I guess, until two o'clock this afternoon. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Roger L. Gregory, G. Steven Agee, Julius N. Richardson